IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TRACY MAXWELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:18-CV-757-MHT-CSC |
| | ) [WO] |
| DR. W. RAHMING [M.D.], et al., | ) |
| | ) |
| Defendants. | ) |

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

## **I. INTRODUCTION**[1]

Plaintiff Tracy Maxwell ["Maxwell"] filed this 42 U.S.C. § 1983 action for damages on August 27, 2018, while in custody of the Alabama Department of Corrections ["ADOC"].[2] The Complaint involves a dispute over the adequacy of medical care and treatment afforded Maxwell while he was incarcerated at the Kilby Correctional Facility in Mt. Meigs, Alabama. Maxwell names as defendants Dr. Wilcotte Rahming, the Medical Director at Kilby during the time relevant to the allegations, and Wexford Health Sources, Inc.[3]

Defendants filed answers, written reports with supplement, and supporting evidentiary material addressing Maxwell's claims for relief. Docs. 14, 27, 28, 34, 35, 39.

---

[1] All documents and attendant page numbers cited herein are those assigned by the Clerk of this Court in the docketing process.

[2] During the pendency of this action Maxwell was released from prison. *See* Doc. 68.

[3] Previously, the Court dismissed Maxwell's Complaint against the Alabama Department of Corrections – Medical Unit and Nurse Orr. *See* Docs. 12, 13, 43, 44.

In these documents, Defendants deny they acted in violation of Maxwell's constitutional rights and maintain Maxwell received appropriate medical treatment at all times relevant to the claims alleged. *See* Docs. 27-2, 28-1, 34-1.  Defendants also assert this matter is due to be dismissed because Maxwell failed to exhaust an administrative remedy available to him through the prison system's medical provider regarding his claims prior to filing the Complaint. Docs. 14, 35.  Defendants base their exhaustion defense on Maxwell's failure to comply with the institutional medical provider's grievance procedure regarding the claims presented.  Doc. 39-1.

On November 27, 2018, the Court entered an Order granting Maxwell an opportunity to file a response to Defendants' written reports and supplement in which he was advised to specifically address Defendants' argument that his "claims are due to be dismissed because he failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA")." Doc. 40 at 1 (footnote omitted). The Order advised Maxwell his response should be supported by affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. 40 at 3. This Order further cautioned Maxwell that unless "sufficient legal cause" is shown within ten days of entry of this Order "why such action should not be undertaken, the court may at any time [after expiration of the time for his filing a response to this order] and without further notice to the parties (1) treat the [written] report, as supplemented, and any supporting evidentiary materials as . . . a motion to dismiss . . . and (2) after considering any response as allowed by this order, rule on the motion in accordance with law."  Doc. 40 at 3. Maxwell responded to Defendants' reports. Docs. 36, 45.

2

In his response to Defendants' exhaustion defense, Maxwell contends it was impossible for him to file a grievance because the dispute over his medical care and treatment occurred after he arrived at Kilby. Maxwell maintains he experienced a delay in receiving adequate and timely medical care from Defendants which resulted in him having a heart attack. Thus, Maxwell asserts it was "factual[ly] impossible" and useless for him to file a grievance regarding his claims prior to filing suit and because "[g]rievances are for the inmates confined within the Alabama Department of Corrections who[] are suffering medical problems before any treatment or care by the healthcare provider." Doc. 45 at 2 (internal quotation marks omitted). The administrative remedy, Maxwell claims, was therefore a "dead end" and "there was no way possible to navigate" the grievance procedure regarding his claim. Doc. 36 at 2.

To support their written reports, Defendants produced Maxwell's inmate medical file and an affidavit from Nurse Kimberley Griffin, the Health Services Administrator ["HSA"] at Kilby. These documents and affidavit reflect Maxwell had access to the institutional medical provider's administrative remedy procedure but did not comply with the grievance procedure as he submitted no grievance regarding matters challenged in the Complaint prior to filing suit. Doc. 39-1 at 8. While Maxwell maintains it was impossible or futile to exhaust his claims against Defendants, the documents and records before the Court demonstrate that during all times relevant to the allegations made, Maxwell had access to the institutional medical provider's grievance process but failed to comply properly with the administrative grievance remedy prior to filing this action. *See Bock*, 549 U.S. at 218 (find that "[t]he level of detail necessary in a grievance to comply with the

3

grievance procedures will vary from system to system and claim to claim, but it is the prison [medical provider's] requirements, and not the PLRA, that define the boundaries of proper exhaustion.").

The Court will treat Defendants' written reports and supplement as a motion to dismiss regarding the exhaustion defense and resolve this motion in their favor. *Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir. 2008) (internal quotations omitted) (holding that "an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment [motion]; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment."); *see also Trias v. Fla. Dept. of Corrs.*, 587 F. App'x 531, 534 (11th Cir. 2014) (holding that the district court properly construed a defendant's "motion for summary judgment as a motion to dismiss for failure to exhaust administrative remedies").

## II. STANDARD OF REVIEW

In addressing the requirements of 42 U.S.C. § 1997e exhaustion, the Eleventh Circuit has

> recognized that [t]he plain language of th[is] statute makes exhaustion a precondition to filing an action in federal court. This means that until such administrative remedies as are available are exhausted, a prisoner is precluded from filing suit in federal court.

*Leal v. Ga. Dept. of Corrs.*, 254 F.3d 1276, 1279 (11th Cir. 2001) (citations and internal quotations omitted). Furthermore, "the question of exhaustion under the PLRA [is] a 'threshold matter' that [federal courts must] address before considering the merits of the case," and that cannot be waived. *Myles v. Miami-Dade Cnty. Corr. & Rehab. Dept.*, 476

F. App'x 364, 366 (11th Cir. 2012) (quoting *Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2004)).

> When deciding whether a prisoner has exhausted his remedies, the court should first consider the plaintiff's and the defendants' versions of the facts, and if they conflict, take the plaintiff's version of the facts as true. If in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed. If the complaint is not subject to dismissal at this step, then the court should make specific findings in order to resolve the disputed factual issues related to exhaustion.

*Myles*, 476 F. App'x at 366 (citations and internal quotations omitted). Consequently, a district court "may resolve disputed factual issues where necessary to the disposition of a motion to dismiss for failure to exhaust [without a hearing]. The judge properly may consider facts outside of the pleadings to resolve a factual dispute as to exhaustion where doing so does not decide the merits, and the parties have a sufficient opportunity to develop the record." *Trias*, 587 F. App'x at 535. Based on the foregoing, the Eleventh Circuit has rejected an inmate-plaintiff's argument that "disputed facts as to exhaustion should be decided" only after a trial either before a jury or judge. *Id*. at 534.

### III. DISCUSSION

Maxwell challenges the provision of medical care he received during his incarceration at the Kilby Correctional Facility in Mt. Meigs, Alabama. In response to these claims, Defendants assert this case may be dismissed because Maxwell did not exhaust the administrative remedy provided by the institutional healthcare provider for inmates to seek review of any aspect of their medical care and treatment prior to filing a complaint as required by the PLRA. Docs. 14, 35, 39-1.

The PLRA compels proper exhaustion of available administrative remedies before a prisoner can seek relief in federal court in a § 1983 action. Specifically, 42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "Congress has provided in § 1997(e)(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative remedies." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "The PLRA strengthened [the exhaustion] provision [applicable to inmate complaints] in several ways. Exhaustion is no longer left to the discretion of the district court, but is mandatory. Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards. Indeed, as [the Supreme Court] held in *Booth*, a prisoner must now exhaust administrative remedies even where the relief sought–monetary damages–cannot be granted by the administrative remedies." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (internal citation omitted).

Exhaustion of all available administrative remedies is a precondition to litigation and a federal court cannot waive the exhaustion requirement. *Booth*, 532 U.S. at 741; *Alexander v. Hawk*, 159 F.3d 1321, 1325 (11th Cir. 1998). "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." *Ross v. Blake*, 136 S.Ct. 1850, 1857 (2016). However, "[a] prisoner need

not exhaust remedies if they are not available." *Id*. at 1855 (internal quotation marks omitted).  Generally, a remedy is "available" when it has "sufficient power or force to achieve an end,[or is] capable of use for the accomplishment of a purpose[.]" *Booth*, 532 U.S. at 737 (internal quotation marks omitted).  Moreover, "the PLRA exhaustion requirement requires proper exhaustion." *Woodford*, 548 U.S. at 93.  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [as a precondition to filing suit in federal court] because no adjudicative system can function effectively without imposing some orderly structure on the courts of its proceedings. . . . Construing § 1997e(a) to require proper exhaustion . . . fits with the general scheme of the PLRA, whereas [a contrary] interpretation [allowing an inmate to bring suit in federal court once administrative remedies are no longer available] would turn that provision into a largely useless appendage." *Id.* at 90–91, 93.  The Supreme Court reasoned that because proper exhaustion of administrative remedies is necessary an inmate cannot "satisfy the Prison Litigation Reform Act's exhaustion requirement . . . by filing an untimely or otherwise procedurally defective administrative grievance or appeal[,]" or by effectively bypassing the administrative process simply by waiting until the grievance procedure is no longer available to him.  *Id.* at 83-84; *Bryant*, 530 F3d at 1378 (explaining that to exhaust administrative remedies in accordance with the PLRA, prisoners must "properly take each step within the administrative process."); *Johnson v. Meadows*, 418 F.3d 1152, 1157 (11th Cir. 2005) (holding that inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA); *Higginbottom*, 223 F.3d at 1261 (observing that

7

inmate's belief that administrative procedures are futile or needless does not excuse the exhaustion requirement). "The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." *Smith v. Terry*, 491 F. App'x 81, 83 (11th Cir. 2012).

It is undisputed that the health care provider for the ADOC provides a grievance procedure for inmate complaints related to the provision of medical treatment they receive in prison. The evidentiary material filed reflects Maxwell had access to the grievance procedure during his incarceration at Kilby and there is no evidence correctional or medical staff at the facility interfered with Maxwell's ability to file a grievance. Doc. 39-1; *see also* Doc. 27-1; Doc. 28; Doc. 34-1.

Regarding the institutional medical provider's grievance procedure, Defendants' evidence reflects that a grievance procedure is available for inmates to present problems, issues, or complaints they have regarding medical treatment provided at the institutional healthcare unit. Health care grievance forms are available to inmates at the health care unit or through any correctional officer. Kimberley Griffin, the HSA at Kilby, affirms she is the custodian of all grievances filed by inmates, and in this capacity the grievances are handled by her or her designee. Nurse Griffin states Maxwell did not file any grievance related to his medical care and treatment at Kilby before filing his Complaint. Nurse Griffin, therefore, testifies that Maxwell did not follow or comply with the healthcare provider's administrative remedy regarding his claims prior to filing suit. Doc. 39-1.

Attached to Nurse Griffin's affidavit is a copy of the healthcare provider's grievance policy and procedure. This document reflects that the medical complaint box is checked

daily—Monday through Friday—for inmate request slips and medical grievance forms. The HSA or her designee must answer an inmate grievance within ten working day of receipt of the grievance. After a response to the grievance is completed, the grievance form is annotated in the grievance log by an administrative assistant. The original written response to a grievance is kept on file with the grievance log and a copy of the written response to the grievance is provided to the inmate. An inmate may appeal a grievance response which must be answered, in writing, by the HSA within seven working days and must be appropriately annotated in the grievance log. Inmates are provided with a copy of the completed grievance appeal containing the health service administrator's response. If an inmate is unsatisfied with the HSA's response to the grievance appeal, an in-person meeting must take place with the HSA and any other members of the health care team that may be indicated. If the matter remains unresolved, a meeting is arranged with the aforementioned individuals and the Warden or the Warden's designee. Doc. 39-1 at 4–13.

The record reflects Maxwell did not utilize the institutional healthcare provider's administrative remedy process regarding the issues raised in his Complaint. By not doing so, Maxwell failed to exhaust his administrative remedies prior to filing this case. *See Woodford*, 548 U.S. at 90-91. Maxwell claims, however, that the process was unavailable because: (1) it was "factual[ly] impossible" and useless for him to file a grievance regarding the challenged matter as the actions about which he complains occurred after he arrived at Kilby due to untimely and inadequate medical care; and (2) the grievance process is for inmates confined within the Alabama Department of Corrections who are experiencing medical problems or issues before receiving treatment or care by the healthcare provider.

9

Maxwell therefore argues the institutional administrative remedy was futile or unavailable to him regarding the claims presented. Docs. 36, 45.

The Supreme Court has delineated three circumstances that may render administrative remedies unavailable:

> (1) when the administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes...incapable of use...[and] no ordinary prisoner can discern or navigate it"; and (3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Geter v. Baldwin State Prison*, 974 F.3d 1348, 1355 (11th Cir. 2020) (quoting *Ross*, 136 S.Ct. at 1859-60).

The record establishes that the institutional healthcare provider for the ADOC has an administrative remedy procedure available to inmates and that Maxwell had this administrative remedy available to him during his confinement. Maxwell's assertion that the administrative remedy process was not available or an exercise in futility because his challenge to the provision of his medical care was based on an after-the-fact medical event, and the grievance procedure could not afford him relief under this circumstance, is insufficient. Maxwell's assertion fails to demonstrate the administrative remedy procedure was not available to him. *See Booth,* 532 U.S. at 741 n.6. (finding an argument that exhaustion would be futile is no excuse to a lack of exhaustion, and noting the Court "will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.); *Moon v. Rayapati*, 2008 WL 4493298, *7 (M.D. Ala. Sept. 29, 2008) (dismissing plaintiff's claims for failure to exhaust administrative remedies and

explaining that "[plaintiff's] subjective belief that resort to administrative remedies would have been futile and/or ineffectual is not relevant.").

Here, the evidentiary record demonstrates Maxwell had an administrative remedy available to him during his confinement, but he failed to exhaust the institutional healthcare provider's administrative remedy process with regard to his claims in the Complaint. By his own admissions in his initial complaint, Maxwell shows he had sufficient time to file a grievance about his medical care. He states that upon arrival at Kilby in April 2018, he had an EKG which indicated a blockage. Doc. 1 at 3. Nonetheless, Maxwell did not use the grievance procedure to complain about the medical defendants' lack of action at that time. Specifically, despite the availability of an administrative remedy procedure and his access thereto, Maxwell filed no administrative remedy regarding the subject matter of this action in accordance with the prison healthcare provider's administrative remedy procedure. Maxwell has also failed to demonstrate the administrative process was otherwise unavailable to him under the circumstances set forth in *Ross*, 136 S.Ct. at 1859-60.

The record shows the administrative remedy is no longer available to Maxwell because he is no longer incarcerated. *See* Doc. 68 (Notice of Change of Address). Dismissal with prejudice is therefore appropriate. *Bryant*, 530 F.3d at 1375 n.1; *Johnson*, 418 F.3d at 1157; *Marsh v. Jones*, 53 F.3d 707, 710 (5th Cir. 1995) (holding that "[w]ithout the prospect of a dismissal with prejudice, a prisoner could evade the exhaustion requirement by filing no administrative grievance or by intentionally filing an untimely one, thereby foreclosing administrative remedies and gaining access to a federal forum without exhausting administrative remedies."); *Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2004)

11

(footnotes omitted) (holding that inmate's "federal lawsuits [were] properly dismissed with prejudice" where previously available administrative remedies had become unavailable).

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendants' motions to dismiss (Docs. 27, 34) be GRANTED to the extent Defendants seek dismissal of this case due to Plaintiff's failure to properly exhaust an institutional administrative remedy prior to filing suit.

2. This case be DISMISSED with prejudice under 42 U.S.C. § 1997e(a).

3. No costs be taxed.

The parties may file an objection to the Recommendation **on or before May 25, 2021**. Any objection filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. This Recommendation is not a final order and, therefore, it is not appealable.

Failure to file a written objection to the Magistrate Judge's findings and recommendations under 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done, this 11th day of May 2021.

                               /s/  Charles S. Coody
                               CHARLES S. COODY
                               UNITED STATES MAGISTRATE JUDGE